UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**RACHEL M. THOMPSON,**

    **Plaintiff,**

    v.                                                     Case No.: 2:16-cv-734
                                                            JUDGE SMITH
                                                            Magistrate Judge Jolson

**GENERAL REVENUE CORP.,**

    **Defendant.**

## OPINION AND ORDER

This matter is before the Court upon Defendant's Motion for Judgment on the Pleadings. Defendant General Revenue Corp. ("GRC") moved for judgment on the pleadings as to all of Plaintiff Rachel Thompson's claims (Doc. 5). Plaintiff opposed Defendant's motion (Doc. 11) and Defendant replied in support (Doc. 13). Plaintiff also filed a surreply in further opposition (Doc. 19) to which Defendant responded (Doc. 26). The Motion for Judgment on the Pleadings is now ripe for review. For the following reasons, Defendant's Motion is **DENIED**.

    **I.    BACKGROUND**

This case arises from a July 31, 2015 dunning letter sent by GRC to Plaintiff for a debt that was allegedly owed. (Doc. 2, Am. Compl. at ¶ 17). GRC's letter sought to collect a $959.00 debt Plaintiff allegedly owed to Columbus State Community College. (*Id.* at ¶¶ 15, 17). Additionally the letter sought interest of $18.37 and a "Collection Cost Balance" of $429.07. (*Id.*).

Plaintiff's debt to Columbus State originated from her enrollment in summer classes in 2014. (*Id.* at ¶ 8). Plaintiff obtained a federal student loan to pay her tuition but received a

refund check from Columbus State in June 2014, for what she believed to be an overpayment. (*Id.* at ¶¶ 9–12). In October 2014, Columbus State contacted Plaintiff, notifying her of an outstanding balance of $959.00. (*Id.* at ¶ 13). Plaintiff made repeated efforts to ascertain the nature of the amount owed but could not verify the amount or the basis for the amount. (*Id.* at ¶¶ 14–15).

GRC alleges that it sent the letter because the Ohio Attorney General certified Plaintiff's account for collection, specifying the amounts for both the underlying debt and the collection fee. (Doc. 3, Ver. Answer at ¶¶ 17, 18, 20). The Ohio Attorney General was collecting the debt on behalf of Columbus State pursuant to Ohio Revised Code § 131.02(A). (*Id.* at ¶ 17). GRC further alleges that it is a Third Party Collection Vendor for the Ohio Attorney General and that it assists in collecting debts for the Ohio Attorney General. (*Id.*).

Plaintiff alleges that both GRC's request for the debt and for the collection costs were violations of the FDCPA. Plaintiff claims that GRC's assertions that it had a legal right to the collections cost and the principal balance were false, deceptive, or misleading in violation of 15 U.S.C. § 1692e; that GRC's claims for the collections cost and the principal balance were false representations of the character, amount, or legal status of the debt, in violation of 15 U.S.C. § 1692e(2)(A); and that GRC's claims for the collections cost and the principal balance were false representations of the services rendered or compensation which may be lawfully received in violation of § 1692e(2)(A).

Defendant moved for judgment on the pleadings, arguing Defendant had a legal right to collect both the principal and the collection fee; and thus that the dunning letter complied with the FDCPA. The Court will address each argument in turn below.

## II. STANDARD OF REVIEW

Defendant brings this motion pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." The standard of review for a motion for judgment on the pleadings under Rule 12(c) is the same as that used to address a motion to dismiss under Rule 12(b)(6). *Id.*; *Lindsay v. Yates*, 498 F.3d 434, 438 (6th Cir. 2007).

Rule 12(b)(6) permits dismissal of a lawsuit for "failure to state a claim upon which relief can be granted." To meet this standard, a party must allege sufficient facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). A pleading will satisfy this plausibility standard if it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering whether a complaint fails to state a claim upon which relief can be granted, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Ohio Police & Fire Pension Fund v. Standard & Poor's Fin. Servs. LLC*, 700 F.3d 829, 835 (6th Cir. 2012) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663. Thus, while a court is to afford plaintiff every inference, the pleading must still contain facts sufficient to "provide a plausible basis for the claims in the complaint;" a recitation of facts intimating the "mere possibility of misconduct" will not suffice. *Flex Homes, Inc. v. Ritz-Craft Corp of Mich., Inc.*, 491 F. App'x 628, 632 (6th Cir. 2012); *Iqbal*, 556 U.S. at 679.

In sum, "[f]or purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (quoting *S. Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973)).

### III. DISCUSSION

GRC filed its Motion for Judgment on the Pleadings as to all of Plaintiff's claims, arguing that GRC had a legal right to collect on both the principal and the collection fee and that even if it did not, GRC was entitled to rely on the information supplied to it by the Attorney General. GRC argues that Plaintiff's claims regarding the principal balance not being owed are untimely and that GRC is again entitled to rely on the Attorney General's information in collecting the debt.

Plaintiff brings her claims under 15 U.S.C. § 1692e, which provides, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." Plaintiff alleges that GRC violated § 1692e by falsely reporting that Plaintiff owned the principal balance and that Plaintiff owed the collection fee.

A § 1692e claim requires a showing of four elements: "(1) plaintiff must be a 'consumer' as defined by the Act; (2) the 'debt' must arise[ ] out of transactions which are 'primarily for personal, family or household purposes;' (3) defendant must be a 'debt collector' as defined by the Act; and (4) defendant must have violated § 1692e's prohibitions." *Wallace v. Wash. Mut. Bank, F.A.*, 683 F.3d 323, 326 (6th Cir. 2012). With the first three elements of a § 1692e claim satisfied by the allegations in the Amended Complaint, only the fourth—alleging a violation of § 1692e's provisions—remains.

Section 1692e(10) prohibits a debt collector from using any false or deceptive means to collect or attempt to collect any debt. False and deceptive means covers a wide variety of improper actions. *See Gionis v. Javitch, Block, Rathbone, LLP*, 238 F. App'x 24, 30 (6th Cir. 2007) (holding threat in complaint to collect attorney fees where attorney fees were not legally allowed was a violation of § 1692e(10)); *Gearing v. Check Brokerage Corp.*, 233 F.3d 469, 472 (7th Cir. 2000) (finding violation of § 1692e(10) where debt collector filed false affidavit with complaint claiming collector was subrogee of original creditor); *Williams v. Javitch, Block & Rathbone, LLP*, 480 F. Supp. 2d 1016, 1023 (S.D. Ohio 2007) (Beckwith, J.) (finding affidavit containing false or deceptive assertions about a debt a potential violation of § 1692e(10)); *Delawder v. Platinum Fin. Servs. Corp.*, 443 F. Supp. 2d 942, 948 (S.D. Ohio 2005) (Dlott, J.) (same). Courts view potential violations of § 1692e(10) through the "least-sophisticated-consumer" test. *Gionis*, 238 F. App'x at 28. "The basic purpose of the least-sophisticated-consumer standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." *Id.* (quoting *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993)).

GRC alleges that there was nothing false or deceptive about their attempt to collect the principal amount or the collection costs because the debt was properly certified to the Attorney General by Columbus State, that the Ohio Revised Code explicitly grants the Attorney General the discretion to assess collection costs to the debtor, and that GRC is legally allowed to collect both the debt and collection fee on the Attorney General's behalf from the debtor. In the alternative, GRC argues that it is entitled to rely on the Attorney General's information regarding the amount and nature of the debt. The Court will address the claims regarding both the collection costs and the principal in turn below.

## A. Principal Balance

GRC alleges that Plaintiff made no plausible, fact-based claims regarding the principal balance in the Amended Complaint and thus, all claims related to the principal balance should be dismissed. GRC further argues that Plaintiff's claims are barred because she did not seek verification of the debt and that even if Plaintiff's claim are not barred, then GRC was under no duty to investigate those claims and thus is entitled to judgment.

GRC's first argument—that there are no plausible facts underlying Plaintiff's claim she did owe the principal balance—is unavailing. GRC alleges that the only reference to the principal balance in Plaintiffs Amended Complaint is that Plaintiff alleged "[u]pon information and belief, Plaintiff does not owe the $959.00 amount." (Doc. 2, Am. Compl. at ¶ 16). However, even if this conclusory allegation is insufficient, it is not the only factual allegation regarding the principal balance. In the paragraphs immediately preceding the allegation cited by GRC, Plaintiff also alleged:

> 14. Plaintiff contacted Columbus State on multiple occasions to request a review of her account, and to determine whether any amounts were legitimately owed.
>
> 15. Plaintiff was not able to obtain sufficient account records from Columbus State to substantiate that the $959.00 amount was owed.

(*Id.* at ¶¶ 14–15). Additionally, Plaintiff alleged that she had arranged for her tuition to be paid for by a loan and that Columbus State sent her a refund check that Plaintiff believed was a refund for an overpayment. (*Id.* at ¶¶ 9–12). Given these allegations, Plaintiff has provided sufficient factual allegations at this stage that the debt was not owed.

Next, GRC argues that Plaintiff is foreclosed from making a claim that the debt was not owed because she did not seek verification of the debt. Although other courts have penalized

plaintiffs for failing to seek verification,[1] in a well-reasoned opinion, the Third Circuit Court of Appeals has specifically denied this same argument, noting that, "[t]he statute's text provides no indication that Congress intended to require debtors to dispute their debts under § 1692g before filing suit under § 1692e, and in fact, the statutory language suggests the opposite." *McLaughlin v. Phelan Hallinan & Schmieg, LLP*, 756 F.3d 240, 247 (3d Cir. 2014). First, as noted by the Third Circuit, 15 U.S.C. § 1692g(c) states that "[t]he failure of a consumer to dispute the validity of a debt under this section may not be construed by any court as an admission of liability by the consumer." This means that the statute protects a prospective litigant from being penalized in a lawsuit if he or she chooses not to seek validation." *McLaughlin*, 756 F.3d at 247. The Court also found that to hold otherwise would be inconsistent with the FDCPA's purpose of curtailing untoward debt collection practices by "immunizing false statements that a consumer failed to promptly dispute." *Id.* at 248. Last, the Court held that allowing a party to ignore the validation process will have no effect on the validation procedures because validation "can enable debtors to cheaply and quickly resolve disputes with debt collectors" and "facilitate the exchange of information." *Id.*

Defendant's citation to *Richmond v. Higgins*, 435 F.3d 825, 829 (8th Cir. 2006) is unavailing. In *Higgins*, the Eighth Circuit did not hold that a plaintiff waives an FDCPA claim if it fails to follow the verification procedure in the FDCPA. Rather, the Eighth Circuit held that where a debt collection "attempt[s] to collect a previously undisputed debt amount," there is no

---

[1] "Several district courts share this view. *See, e.g., Bleich v. Revenue Maximization Grp., Inc.*, 233 F. Supp. 2d 496, 500 (E.D.N.Y. 2002) (holding that a plaintiff could not sue in response to a misstated debt in a letter conforming to the FDCPA's validation requirements and reasoning '[h]ad Plaintiff exercised her rights under the FDCPA to obtain debt verification, it is entirely likely that litigation would have been avoided'); *Lindbergh v. Transworld Sys., Inc.*, 846 F. Supp. 175, 179 (D.Conn. 1994) ('[T]he court can only wonder why the plaintiff has chosen to impose the significant burden of litigation on both the defendant and this court, instead of simply following the cost-effective procedures provided by the FDCPA specifically designed to facilitate the exchange of information between debt collectors and debtors.') . . . ." *McLaughlin v. Phelan Hallinan & Schmieg, LLP*, 756 F.3d 240, 247 (3d Cir. 2014)

FDCPA claim if the debtor knew about the debt and the collection efforts and made no effort to dispute it. *Id.* In this case, Plaintiff alleged she contacted Columbus State "on multiple occasions to request a review of her account, and to determine whether any amounts were legitimately owed." (*See* Doc. 2, Am. Compl. at ¶ 14). The Court agrees with the Third Circuit's analysis of 1692g and finds that Plaintiff did not waive her claim that the debt is not owed when she did not elect to use the FDCPA's verification procedure.

GRC argues that it was under no duty to do an independent investigation of the legality of the collection costs before seeking it from Plaintiff based on *Smith v. Transworld Sys., Inc.*, 953 F.2d 1025, 1032 (6th Cir. 1992). GRC misunderstands *Smith*. While *Smith* does state that "[t]he statute does not require an independent investigation of the debt referred for collection," *Smith* noted that in place of an independent investigation, "the FDCPA requires 'the maintenance of procedures reasonably adapted to avoid any such error.'" *Id.* (quoting 15 U.S.C. § 1692k(c)). Essentially, *Smith* held that a debt collector need not do an independent investigation of the legality of the underlying debt so long as the debt collector "employs procedures reasonably adapted to prevent errors in amounts referred for collection." *Id.*

In essence, the *Smith* decision reinforced that compliance with the bona fide error defense in 15 U.S.C. § 1692k(c) is sufficient to overcome a claim under the FDCPA. The bona fide error defense consists of the following:

> [a] debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."

15 U.S.C. § 1692k(c). Courts have subsequently parsed out a three part test for the bona fide error defense: "a debt collector must prove by a preponderance of the evidence that the violation was unintentional, that it was the result of a bona fide error, and that the debt collector

maintained procedures to avoid the error." *Currier v. First Resolution Inv. Corp.*, 762 F.3d 529, 537 (6th Cir. 2014) (citing *Hartman v. Great Seneca Fin. Corp.*, 569 F.3d 606, 614 (6th Cir. 2009)).

GRC similarly misconstrues *Edwards v. McCormick* as not requiring an investigation. 136 F. Supp. 2d 795, 804 (S.D. Ohio 2001) (Marbley, J.). In *Edwards*, the debt collector "specifically demanded and received assurances from [his client] . . . before proceeding with any debt collection actions against [the plaintiff]." *Id.* Defendant has presented no such evidence in this case. GRC's verified answer makes no reference to the procedures it employs to prevent errors in amounts referred to it in collections, and therefore, Defendant cannot simply "reasonably rely" on the Attorney General's information regarding the debt without meeting the other requirements for use of the bona fide error defense. Defendant's Motion to Dismiss Plaintiff's Claims regarding the principal balance is **DENIED**.

**B.     Collection costs**

GRC alleges that the collections cost is statutorily allowed, and thus, GRC's attempt to collect it does not run afoul of the FDCPA. GRC argues that the FDCPA explicitly allows a debt collector to collect fees if the amount is "'expressly authorized by the agreement creating the debt or permitted by law.'" (Doc. 5-1, Mot. at 5 (quoting 15 U.S.C. § 1692f(1))). At the outset, the Court notes that Plaintiff did not make a claim under 15 U.S.C. § 1692f and thus the question is not whether § 1692f permits the collection of the fee from the debtor but, rather, whether the Ohio Revised Code provides for the collection of the fee from the debtor such that GRC's attempt to collect it was not false, deceptive, or misleading.

GRC argues that the collections fee is statutorily allowed by Ohio Revised Code § 131.02(A) which concerns "Collecting amounts due to state." The statute sets forth the

procedure by which a state institution like Columbus State certifies debts to the Attorney General for collections, noting:

> if the amount is not paid within forty-five days after payment is due, the officer, employee, or agent shall certify the amount due to the attorney general, in the form and manner prescribed by the attorney general, and notify the director of budget and management thereof.

*Id.* If the amount is due to a college like Columbus State, the timing of certification is moderately different but ultimately not germane to this matter. *Id.* However, the statute also provides that, "[t]he attorney general may assess the collection cost to the amount certified in such manner and amount as prescribed by the attorney general." *Id.* GRC asserts that this provision gives the Attorney General complete unfettered discretion to assess a collections fee on any debt owed to the state and to collect that fee over and above the principal and interest due to the state. (*See* Doc. 5-1, Mot. at 3). Plaintiff argues that the collections cost is not an amount collected from the debtor, but rather that that the collection cost is an amount deposited in the Attorney General Claims Fund before the remaining collected principal and interest are deposited into Ohio's General Revenue Fund. (Doc. 11, Mem. Opp. at 4). Plaintiff essentially argues that the collections cost is an internal method of ensuring that the cost of collecting the principal and interest is provided to the Attorney General in order to pay for the collections process but that this amount is not recoverable form the consumer.

Plaintiff's argument—that the Ohio Revised Code never states that the collection cost assessed against the debtor or listed as a cost which could be collected against the debtor—is interesting but relies significantly on a negative reading of the statute. Although the statute specifically states that the collection cost is assessed "to the amount certified in such manner," not necessarily to the debtor, the Court is not convinced that § 131.02 unambiguously amounts to an internal accounting procedure. Ohio Rev. Code § 131.02(A). However, the Court is also

10

unconvinced that the language, "[t]he attorney general may assess the collection cost to the amount certified in such manner and amount as prescribed by the attorney general," is sufficiently clear to grant unfettered, unlimited, and complete discretion to the Attorney General to pass collection costs onto a debtor without providing any explanation for those costs or giving the debtor a chance to respond.

If the statute is read sequentially, then there is some support for the Attorney General charging the collection cost to the debtor. Specifically, § 131.02(A) starts the process with the creditor certifying the debt to the Attorney General. The Attorney General then assesses the collection cost "to the amount certified in such manner and amount as prescribed by the attorney general." Ohio Rev. Code § 131.02(A). The Attorney General and the creditor then agree to a time the payment is due. *Id.* Next, the Attorney General gives "immediate notice by mail or otherwise to the party indebted of the nature and amount of the indebtedness." *Id.* at § 131.02(B)(1). Finally, the Attorney General "shall collect the claim or secure a judgment and issue an execution for its collection." *Id.* at § 131.02(C). The term "the claim" in § 131.02(C) is not defined in the applicable Revised Code sections but the statute refers to the amount to be collected as "the claim" or "a claim" rather than "the amount certified" in every other section. This lends support to an argument that once the collection costs are added to the amount certified, it becomes the claim for all other purposes, including collection. However, this again is a very insubstantial basis to grant the Attorney General the fee shifting power Defendant argues the Attorney General enjoys. The Court finds that both parties presented reasonable but not unambiguous readings of the statute, and thus, the Court finds the statute is ambiguous.

Both the Ohio 10th District Court of Appeals and the Supreme Court of Ohio have ruled in cases where § 131.02(A) was implicated. In *Disciplinary Counsel v. Squire*, the Supreme

Court of Ohio considered a case where the respondent disputed the amount owed to the Board of Professional Conduct for his reinstatement proceedings. 2016-Ohio-32, 144 Ohio St. 3d 1449, 43 N.E.3d 458. The respondent moved to eliminate the costs owed to the Attorney General for collection costs because he alleged the assessment of those costs violated the automatic stay in his pending bankruptcy. *Id.* In a short order, the Supreme Court denied the respondent's motion and ordered that "respondent is liable for all collections costs pursuant to R.C. 131.02 if the debt is certified to the Attorney General for collection." *Id.* However, the Ohio Supreme Court's order is not necessarily an interpretive view of the statute's requirements, but a list of the imposed conditions necessary for reinstatement to the bar for this particular attorney. In fact, the Ohio Supreme Court frequently imposes an identical requirement during disciplinary proceedings. *See Cincinnati Bar Assn. v. Schwieterman*, 2014-Ohio-4075, ¶ 3, 140 Ohio St. 3d 1240, 1241, 18 N.E.3d 438 ("It is further ordered that respondent is liable for all collection costs pursuant to R.C. 131.02 if the debt is certified to the attorney general for collection."); *Columbus Bar Assn. v. Winkfield*, 2014-Ohio-2490, ¶ 4, 139 Ohio St. 3d 1249, 1250, 13 N.E.3d 1174 (same).

The 10th District also had occasion to address § 131.02(A) in a case but did not make any explicit finding. *State of Ohio Dep't of Dev. v. Matrix Centennial, L.L.C.*, 10th Dist. Franklin No. 14AP-47, 2014-Ohio-3251. The 10th District noted that "once an amount is 45 days past due and certified to the attorney general, the attorney general may assess collection costs." *Id.* at ¶ 10. The plaintiff argued that the Common Pleas Court failed to provide a final amount of costs and that the state failed to plead its claim for collections costs. *Id.* at ¶¶ 7, 10. The 10th District upheld the Court of Common Pleas' award of collection costs, finding that "[t]he trial court did not need to specify the amount of the possible future collection costs of this case in order to

make a final appealable order," and that "[t]he attorney general need not file a claim with the trial court in order to assess collection costs." *Id.* at ¶¶ 8–11. The Court's ruling was limited to a finding that the Attorney General need not bring a distinct claim for collection costs, but neither party in *Matrix* argued specifically about whether the Attorney General has the right to assess collection costs against the debtors.

Plaintiff also provided the Court with two cases from the Franklin County Court of Common Pleas: *Columbus City Sch. Dist. v. Hunter*, Franklin C.P. No. 14CV008323, Doc. 11-1 (Jan. 28, 2015), ¶14; *Client's Security Fund of Ohio v. Broschak*, Franklin C.P. No. 12CV011545, Doc. 11-2 (Nov. 15, 2013). In *Columbus City*, the trial court found that § 131.02(A) "gives the Attorney General the right to set the fee that is to be paid from the amounts collected on state claims, not the right to seek an award of collection costs above and beyond the amount of the claims to be paid by third parties . . . ." Franklin C.P. No. 14CV008323, Doc. 11-1 at 10. In *Broschak*, the trial court again found that § 131.02(A) did not give broad discretion to the Attorney General to recover collection costs, noting that "[t]he collection cost is to be 'assessed . . . to the amount certified,' not awarded by the Court or paid by the Defendant as part of Plaintiff's compensatory damages." Franklin C.P. No. 12CV011545, Doc. 11-2 at 15.

Plaintiff argues that two other statutes, Ohio Revised Code §§ 109.081 and 109.21 are relevant here. Ohio Revised Code § 109.21 requires the Attorney General to pay all money collected to the General Revenue fund. Ohio Revised Code § 109.081 establishes the Attorney General Claims fund and states that "[u]p to eleven per cent of all amounts collected by the attorney general . . . on claims certified in accordance with section 131.02 of the Revised Code, shall be paid into the state treasury to the credit of the attorney general claims fund . . . ." It

further states that "[t]he attorney general, after consultation with the director of budget and management, shall determine the exact percentage of those collected amounts that shall be paid into the state treasury to the credit of the [Attorney General Claims] fund. The [Attorney General Claims] fund shall be used for the payment of expenses incurred by the office of the attorney general." *Id.*

When the parties filed their briefing in this case, § 109.081 ended without further language. *See* Baldwin's Ohio Rev. Code Ann. § 109.081 (effective to April 5, 2017). The statute now additionally states that, "[i]n addition to the amount certified, the amount shall be assessed as a collection cost consistent with section 131.02 of the Revised Code, and **is fully recoverable from the party indebted**." Ohio Rev. Code § 109.081 (emphasis added (effective April 6, 2017). In its surreply, Plaintiff argues that the amendment establishes that the previous form of the statute did not authorize the recovery of collection costs from the debtor. Plaintiff argues that the General Assembly inserts certain language into an amendment when the intent of the amendment is to clarify the earlier statute rather than change the statute. Plaintiff notes that in the full text of the bill amending § 109.081, there is a special note where a clarification was specifically noted:

> It is the intent of the General Assembly, by the amendment of this act to the third paragraph of section 109.08 of the Revised Code, to clarify that the paragraph permits and has always permitted the Attorney General to authorize special counsel to use the Attorney General's official letterhead stationary in connection with the collection of any certified claims

Am. Sub. S.B. 227, 2016 Ohio Laws File 155. Plaintiff also points to an Ohio Legislative Services Commission report which stated that under the current statute, "[t]he collection costs are in effect covered by a portion of the amount owed and collected from the indebted party." (Doc. 19, Pl.'s Surreply at 5 (quoting Doc. 19-3, OLSC Feb. 9, 2016 Fiscal Note & Local Impact Statement at 3)). The Fiscal Note and Local Impact Statement also states that "[t]he potential

14

annual magnitude of that **gain** is uncertain." (Doc. 19-3, OLSC Feb. 9, 2016 Fiscal Note & Local Impact Statement at 3). That there would be a gain certainly implies that the Attorney General can now recover more from debtors than he could previously.

The United States Supreme Court has considered a similar issue and held that "the view of a later Congress does not establish definitively the meaning of an earlier enactment, but it does have persuasive value." *Bell v. New Jersey*, 461 U.S. 773, 784 (1983). "Although statements as to legislative intent made by legislators subsequent to the enactment of a statute are typically not entitled to great weight, such statements are nevertheless entitled to consideration as an expert opinion concerning [the statute's] proper interpretation." *Barnes v. Cohen*, 749 F.2d 1009, 1015–116 (3d Cir. 1984) (internal citations and quotations omitted). However, "[w]here the amendment is adopted to clarify rather than change the meaning of earlier legislation, it should be accorded even greater weight." *Estate of McCoy v. C.I.R.*, 809 F.2d 333, 338 (6th Cir. 1987) (citations omitted).

The Court agrees with Plaintiff that § 131.02 does not authorize the Attorney General to charge an unlimited and unreviewable amount of collection costs and to seek remittance for those costs from the debtor. Key to the Court's analysis are the legislative history surrounding the amendments to § 191.081 which express that the statute only now gives the Attorney General the power to obtain collection costs from the debtor. Although § 131.02 was not amended, when a statute is ambiguous, the Court must look to the statutory scheme as a whole to determine meaning. Further bolstering the Court's analysis is the canon of constitutional avoidance which counsels "that ambiguous statutory language be construed to avoid serious constitutional doubts." *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 516 (2009). Although neither

party fully briefed the constitutionality of the statute,[2] the Court has sufficient doubts about the constitutionality of the statute to invoke the canon of constitutional avoidance. Defendant's reading of the statute would provide complete discretion to the Attorney General to charge what essentially amounts to a penalty to debtors without notice, a hearing, or any review of the decision.[3]

However, Defendant argues that even if the statute does not grant the Attorney General the power to obtain collection costs from the debtor, a debt collector may reasonably rely on the information provided to it by the Attorney General and the Attorney General's interpretation of the statute. However, GRC's argument fails for the same reasons as those discussed above in Section III.A. Specifically, GRC's Verified Answer details neither the procedures it employs to ensure that all of its collection efforts are for legally valid debts nor states that GRC sought verification of legal basis of this debt before sending its letter to Plaintiff.

It is not clear if the bona fide error defense extends to an alleged mistake of law by a debt collector where an ambiguous statute provides the legal basis for the debt to be collected. In the Supreme Court's recent holding in *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, LPA*, the Supreme Court held that the FDCPA's bona fide error defense does not operate as a *mens rea* requirement for FDCPA violations. 559 U.S. 573, 603 (2010). The Court noted that "the broad statutory requirement of procedures reasonably designed to avoid 'any' bona fide error indicates that the relevant procedures are ones that help to avoid errors like clerical or factual mistakes." *Id.* at 587. Ultimately, the *Jerman* Court did not extend its holding to include all legal errors, but

---

[2] Defendant argued that Plaintiff did not bring a constitutional claim in the Amended Complaint, but Plaintiff's assertion that Defendant lacked the statutory authority to collect collection costs is sufficient to introduce all arguments against Defendant's reading of the statute.

[3] "The essential elements of due process are notice and an opportunity to be heard." *Silvernail v. Cty. of Kent*, 385 F.3d 601, 604 (6th Cir. 2004) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985)).

only that "the bona fide error defense in § 1692k(c) does not apply to a violation of the FDCPA resulting from a debt collector's incorrect interpretation of the requirements of [the FDCPA]." *Id.* at 604–05.

Regardless of whether *Jerman* reaches the activity alleged in this case, Defendant's Verified Answer does not show by a "preponderance of the evidence that the violation was unintentional, that it was the result of a bona fide error, and that the debt collector maintained procedures to avoid the error." *Currier*, 762 F.3d at 537. Specifically, Defendant does not offer any evidence as to the procedures maintained to ensure the amounts provided by the Attorney General are accurate regarding collections cost and thus cannot rely on the bona fide error defense at this stage.

## IV. CONCLUSION

Based on the foregoing, Defendant's Motion for Summary Judgment is **DENIED**. In light of this decision, the parties must contact Magistrate Judge Jolson's chambers within **14 days** of this decision to set a date for mediation. The Clerk shall **REMOVE** Document 5 from the Court's pending motions list.

**IT IS SO ORDERED.**

                                                  __/s/ George C. Smith____
                                                  **GEORGE C. SMITH, JUDGE**
                                                  **UNITED STATES DISTRICT COURT**