UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

RACHEL M. THOMPSON,
On behalf of herself and others
similarly situated,

        Plaintiff,

    v.                              Case No.: 2:16-cv-734
                                    JUDGE SMITH
                                    Magistrate Judge Jolson

GENERAL REVENUE CORP.,

        Defendant.

## OPINION AND ORDER

This matter is before the Court upon Plaintiff Rachel Thompson's Motion for Class Certification (Doc. 48). Plaintiff seeks certification of two (2) Classes pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(3), 23(c)(4), and 23(c)(5) regarding certain issues under 15 United States Code Sections 1692e and 1692k. Defendant General Revenue Corp. ("GRC") opposed Plaintiff's motion (Doc. 51) and Plaintiff replied in support (Doc. 54). The Motion for Class Certification is now ripe for review. For the following reasons, Plaintiff's Motion is **DENIED**.

### I. BACKGROUND

This case arises from a July 31, 2015 dunning letter sent by GRC to Plaintiff for a debt that was allegedly owed. (Doc. 48-1, Declaration of Rachel M. Thompson ("R. Thompson Decl.") at ¶ 2n). GRC's letter sought to collect a $959.00 debt Plaintiff allegedly owed to Columbus State Community College. (*Id.*). Additionally, the letter sought interest of $18.37 and a "Collection Cost Balance" of $439.07. (*Id.*).

Plaintiff's debt to Columbus State originated from her enrollment in summer classes in 2014. (*Id.* at ¶ 2a). Plaintiff obtained a federal student loan to pay her tuition but received a refund check from Columbus State in September 2014, for what she believed to be an overpayment. (*Id.* at ¶ 2f). In October 2014, Columbus State contacted Plaintiff, notifying her of an outstanding balance of $959.00. (*Id.* at ¶ 2g). In December 2014 and January 2015, Plaintiff received two additional letters from the Ohio Attorney General ("OAG") demanding payment. (*Id.* at ¶¶ 2j, 2k). The OAG was collecting the debt on behalf of Columbus State pursuant to Ohio Revised Code § 131.02(A). (Doc. 3, Ver. Answer at ¶ 17). Plaintiff showed these letters to her father, Matthew J. Thompson, who is a licensed Ohio attorney, and partner of Nobile & Thompson Co., L.P.A. (*Id.* at ¶¶ 2i, 2l, 2m). In January 2015, Mr. Thompson sent a letter to the OAG disputing the amount and asking all further correspondence be directed to him. (*Id.* at ¶ l). Without responding to Mr. Thompson's inquiry, the OAG sent another letter to Plaintiff in April 2015. (*Id.* at ¶ 2m). Each subsequent demand letter reflected incremental increases in interest and "fees" associated with the account.

Eventually, the OAG forwarded Plaintiff's account to GRC for collection efforts. GRC sent a collection letter to Plaintiff dated July 31, 2015, in which it demanded the payment of the principal amount, $18.37 in interest and $439.07 in collection costs. (*Id.* at ¶ 2n). GRC alleges that it sent the letter because the Ohio Attorney General certified Plaintiff's account for collection, specifying the amounts for both the underlying debt and the collection fee. GRC further alleges that it is a Third Party Collection Vendor ("TPV") for the Ohio Attorney General and that it assists in collecting debts for the Ohio Attorney General. (Doc. 3, Ver. Answer at ¶ 17).

Over the next several months, Mr. Thompson attempted to interact with Defendant and the OAG in order to ascertain the nature and calculation of the collection costs. (*Id.* at ¶ 2p). After

eventually receiving an unsatisfactory explanation, Plaintiff decided she wanted to be informed as to what legal remedies may be available to her. (*Id.* at ¶ 3). Mr. Thompson explained to his daughter that, under the circumstances and given their familial relationship, he should disassociate himself from the matter and referred Plaintiff to his law partner, James E. Nobile. (*Id.*). Soon thereafter, Mr. Nobile and Mr. Thompson spoke about the case, decided that a class action lawsuit was likely, and decided that Mr. Thompson would have no further personal or professional involvement in the matter. (Doc. 54-1, Declaration of Matthew J. Thompson ("M. Thompson Decl.") at ¶ 13).

In 2016, Plaintiff wished to continue her college studies, but was unable to enroll in any public Ohio college until her debt was paid. (Doc. 48-1, R. Thompson Decl. at ¶ 5). On August 16, 2016, Plaintiff, with her father's assistance, paid the disputed debt's full amount ($1,282.32). Mr. Thompson has not participated in this matter in any way since. (Doc. 54-1, M. Thompson Decl. at ¶ 13).

Plaintiff filed the present action on July 27, 2016 (Doc. 1, 2). Defendant moved for judgment on the pleadings on September 26, 2016 (Doc. 5). That motion was fully briefed, and this Court issued its Opinion and Order denying the motion on August 2, 2017 (Doc. 27). On September 7, 2017, Defendant moved for permission to take an immediate interlocutory appeal (Docs. 31, 32). This Court denied that motion on February 27, 2018. Since this time, the parties have been engaged in case and class-oriented discovery.

Plaintiff alleges that both GRC's request for the debt and for the collection costs were violations of the FDCPA. Plaintiff claims that GRC's assertions that it had a legal right to the collections cost and the principal balance were false, deceptive, or misleading in violation of 15 U.S.C. § 1692e; that GRC's claims for the collections cost and the principal balance were false

representations of the character, amount, or legal status of the debt, in violation of 15 U.S.C. § 1692e(2)(A); and that GRC's claims for the collections cost and the principal balance were false representations of the services rendered or compensation which may be lawfully received in violation of § 1692e(2)(A).

15 U.S.C. § 1692e provides "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." A § 1692e claim requires a showing of four elements: "(1) plaintiff must be a 'consumer' as defined by the Act; (2) the 'debt' must arise[ ] out of transactions which are 'primarily for personal, family or household purposes;' (3) defendant must be a 'debt collector' as defined by the Act; and (4) defendant must have violated § 1692e's prohibitions." *Wallace v. Wash. Mut. Bank, F.A.*, 683 F.3d 323, 326 (6th Cir. 2012).

Plaintiff now moves this Court to certify the following two (2) classes:

**CLASS 1 (As to the Issues of FDCPA Liability and Statutory Damages):**
All persons to whom Defendant mailed at least one written communication dated July 27, 2014 to the present; to collect a non-tax debt owed to the State of Ohio and/or its related entities, which debt was referred to Defendant for collection by the Ohio Attorney General ("OAG") pursuant to a Third Party Collection Vendor Agreement; and in which Defendant sought to recover "collection costs" pursuant to (former) Ohio Revised Code §§109.081 and 131.02. Specifically excepted from this Class are all persons to whom Defendant mailed written communications relating to any accounts placed with Defendant for collection of debts incurred after April 5, 2017, and/or for all accounts placed with Defendant for debts that were not incurred for personal, family or household purposes.

**CLASS 2 (As to the Issue of Disgorgement) or Payment Reapplication of "Collection Costs" Paid:**
All persons to whom Defendant mailed at least one written communication dated July 27, 2014 to the present; to collect a non-tax debt owed to the State of Ohio and/or its related entities, which debt was referred to Defendant for collection by the Ohio Attorney General ("OAG") pursuant to a Third Party Collection Vendor Agreement; and in which Defendant sought to recover "collection costs" pursuant to (former) Ohio Revised Code §§109.081 and 131.02; and after which resulted in any payment from such persons of any funds applied to "collection costs". Specifically excepted from this Class are all persons to whom Defendant mailed written communications relating to any accounts placed with Defendant for

collection of debts incurred after April 5, 2017, and/or for all accounts placed with Defendant for debts that were <u>not</u> incurred for personal, family or household purposes.

Through class discovery, Defendant has identified 40,478 total accounts possibly falling within the above-defined classes. (Doc. 48, Mot. to Cert. at 15). The total combined initial collection cost balances of those accounts was $42,848,574.64. (*Id.*). At the time of production, Defendant's records indicated it had collected $21,410,294.34. (*Id.*). Based on Plaintiff's understanding of Defendant's TPV agreement with the OAG, it is estimated that Defendant was entitled to receive $4,496,161.81 as compensation for its collection efforts. (*Id.* at 16).

## II. CLASS CERTIFICATION STANDARD OF REVIEW

Federal Rule of Civil Procedure 23(a) provides that class action lawsuits may be certified if:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a)(1)–(4). In addition to the four requirements set forth in Rule 23(a), the party seeking certification must also demonstrate that it satisfies at least one of the subcategories of Rule 23(b). *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013); *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). Here, Plaintiff has moved for certification pursuant to Rule 23(b)(3), which dictates that a class action may proceed when "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In addition, Rule 23(b)(3) classes must meet "an

5

implied ascertainability requirement." *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcase, Inc.*, 863 F.3d 460, 466 (6th Cir. 2017).  That is, "the class definition must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537–38 (6th Cir. 2012).  Courts must be able to look to objective criteria to determine whether a proposed class is sufficiently defined.  *Id*. at 538–39.

District courts have broad discretion in certifying class actions so as long as they exercise such discretion within the framework of Rule 23.  *Coleman v. Gen. Motors Acceptance Corp.*, 296 F.3d 443, 446 (6th Cir. 2002).  However, a class "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982); *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998).  While the plaintiff's likelihood of ultimate success of his or her claims on the merits is not one of the elements of the "rigorous analysis," "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013).

"Also, Rule 23 authorizes an action to be brought or maintained as a class action with respect to particular issues." *Rumpke v. Rumpke Container Serv., Inc.*, 205 F.R.D. 204, 207 (S.D. Ohio 2001) (citing Fed. R. Civ. P. 23(c)(4).  "Certification under Rule 23(c)(4), however, does not relieve the moving party from its burden of independently satisfying the requirements of Rules 23(a) and (b).  Fed. R. Civ. P. 23(c)(4)." *Id.*  Finally, "'when appropriate,' the Court may divide a class into subclasses." *Amos v. PPG Indus., Inc.*, No. 2:05-CV-70, 2018 WL 5259579, at *4 (S.D. Ohio Jan. 5, 2018) (Watson, J.) (quoting Fed. R. Civ. P. 23(c)(5)).  "If each subclass meets Rule

23's requirements, the matter may proceed in a consolidated action even if the matter could not have been certified as a single, all-inclusive class under the rule." *Id.* (citing *Buus v. WAMU Pension Plan*, 251 F.R.D. 578, 581 (W.D. Wash. 2008)).

### III. DISCUSSION

#### A. Sufficiency of Class Definitions

Before the Court analyzes the relevant Rule 23(a) and (b) factors, the Court must determine whether the two classes proposed by Plaintiff are sufficiently defined. As noted above, this determination must be made by looking at objective criteria. The "touchstone of ascertainability is whether the class is objectively defined, so that it does not implicate the merits of the case or call for individualized assessments to determine class membership." *Stewart v. Cheek & Zeehandelar, LLP*, 252 F.R.D. 387, 391 (S.D. Ohio 2008) (Marbley, J.).

Here, Plaintiff requested data from Defendant identifying possible class members fitting into either of the two proposed classes. Defendants responded by sending a spreadsheet of 40,478 total accounts with the following objective data points: 1) the unique account number for each account; 2) the date that Defendant sent dunning letters to potential class members; 3) whether those letters included amounts attributable to collection costs; 4) the initial balances of each account, complete with breakdowns of the amounts attributable to principal, interest, penalties, and collection costs; and 5) amounts actually collected by Defendant. (*See, generally* Doc. 48-12, Spreadsheet). All of these data points are objective and define the outer limits of the proposed classes. However, as Defendant points out, there are likely individualized defenses to be found within these broad bounds. Specifically, Defendant argues that Plaintiff's classes are not administratively feasible because: 1) the temporal scope of the proposed classes is not defined because they both encompass potential violations through "the present" rather than a specific cutoff date; 2) the FDCPA's one-year statute of limitations bars all claims for letters sent prior to

July 27, 2015 (one year before the date this lawsuit was filed); 3) there is no objective way to determine whether all of the identified accounts were incurred for personal, family, or household purposes; 4) Plaintiff is not a member of Class 2 because her eventual payment was remitted directly to the OAG, and not GRC; and 5) extensive individualized fact-finding will be necessary to determine which class members' accounts were recalled by the OAG after GRC sent their allegedly unlawful collection notices and were subsequently reduced to judgment in state courts across Ohio, thereby barring class participation under the theories of claim preclusion and/or the collateral attack doctrine.[1]

It is only necessary for the Court to address Defendant's argument concerning the temporal aspect of the proposed class here. Defendant's other arguments are more accurately characterized as affirmative defenses, as opposed to "attack[s] on ascertainability of the proposed class." *Coulter-Owens v. Time, Inc.*, 308 F.R.D. 524, 532 (E.D. Mich. 2015). Accordingly, these arguments will be considered under the Court's analysis of the Rule 23(a) requirements. Rather than trying to parse out every possible exception from the class, the implied requirement of ascertainability "goes to whether the class has been defined such that it encompasses an identifiable group." *Stewart*, 252 F.R.D. at 391. Here, the group is identifiable, and, in fact, has already been identified by Defendant. (*See, e.g., In re Nat'l Prescription Opiate Litig.*, 332 F.R.D. 532, 543 (N.D. Ohio 2019) (finding a class to be sufficiently defined where an Excel spreadsheet identified 34,458 potential class members, noting "[t]he class is therefore not only ascertain***able***, its membership has been ascertain***ed***." (emphasis in original))). With respect to Defendant's

---

[1] In its Response, Defendant explains "[t]he OAG routinely recalls unpaid debts from GRC and appoints special counsel to pursue legal remedies with respect to the debts. According to the OAG, it is likely that a judgment was entered with respect to the debts of a number of the putative class members and that such judgments include the collection costs upon which Plaintiff's claims are based." (Doc. 51, Resp. at 8 (citing Doc. 51, Ex. A, Tharp Aff. at ¶¶ 9–10).

temporal argument, the fact that Plaintiff has not set a definitive ending to the class period is based upon the belief that Defendant continues to seek collection costs for debts incurred prior to April 5, 2017.[2] The Court has not been made aware of any argument or evidence to the contrary, nor has Defendant cited any authority in support of its position. At this time, the Court approves of Plaintiff's proposed class period extending "to the present."

Having found that Plaintiff's proposed classes are sufficiently defined, the Court will now analyze the Rule 23(a) factors.

**B.      Rule 23(a) Class Certification Factors**

   **1.      Numerosity**

Class certification is not appropriate unless the class is so numerous as to render joinder of all members impracticable. *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 541 (6th Cir. 2012); Fed. R. Civ. P. 23(a)(1). Here, Defendant does not contest this requirement. With over 40,000 accounts identified, there is no question that Plaintiff's classes satisfy this requirement.

   **2.      Commonality**

Under Rule 23(a)(2), a plaintiff must show that "there are questions of law or fact common to the class." *Davis v. Cintas Corp.*, 717 F.3d 476, 487 (6th Cir. 2013); Fed. R. Civ. P. 23(a)(2). "Although Rule 23(a)(2) speaks of 'questions' in the plural, [the Sixth Circuit has] said that there need only be one question common to the class." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998). But not just any common question will suffice; the common questions must be capable of "generat[ing] common answers that are likely to drive resolution of the lawsuit." *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 852 (6th Cir. 2013).

---

[2] When this case was filed, § 109.081 ended without further language. *See* Baldwin's Ohio Rev. Code Ann. § 109.081 (effective to April 5, 2017). The statute now additionally states that, "[i]n addition to the amount certified, the amount shall be assessed as a collection cost consistent with section 131.02 of the Revised Code, and **is fully recoverable from the party indebted**." Ohio Rev. Code § 109.081 (emphasis added (effective April 6, 2017).

Both of Plaintiff's classes satisfy this requirement. While this is not a comment on the ultimate merits of Class 1's claims, there can be little doubt the central question at issue is whether Defendant sent correspondence to putative class members seeking to recover collection costs. In addition, Plaintiff identifies the following questions among those capable of generating common answers: 1) If Defendant is found to have sought recovery of collection costs, did Defendant falsely represent the amount of debt owed? And did Defendant give the debtors the false impression it was legally entitled to collect such fees?; 2) Are the subject university accounts "debts" within the meaning of 15 U.S.C. § 1692a(5)?; 3) Are the debtors "consumers" within the meaning of 15 U.S.C. § 1692a(3)?; and 4) Is Defendant considered a "debt collector" under 15 U.S.C. § 1692a(6)? These are but a few of the common questions that are capable of being determined on a class-wide basis. Further, all of these questions will generate common answers.

Class 2, by its nature, presents the same common questions and answers as Class 1 but adds the additional layer of actual payment by the account debtor. If Class 1's claims are found to be meritorious and this added layer becomes a viable ground for relief, the question presents itself: "What is to be done with the portion of those payments which were attributed to collection costs?" That is, should they be reapplied and credited to the principal balance(s) of the accounts, or should they be disgorged to the account debtors? This question, too, would be common to all account debtors in Class 2.

Accordingly, Plaintiff has satisfied the commonality requirement for both Class 1 and Class 2.

### 3. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties be typical of the claims or defenses of the class." "A claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of the other class members, and if his or

her claims are based on the same legal theory." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007). In other words, typicality is satisfied if the class members' claims are "fairly encompassed by the named plaintiffs' claims." *Sprague v. Gen. Motors Corp.,* 133 F.3d 388, 399 (6th Cir.1998) (en banc) (quoting *Am. Med. Sys.,* 75 F.3d at 1082). "This requirement insures that the representatives' interests are aligned with the interests of the represented class members so that, by pursuing their own interests, the class representatives also advocate the interests of the class members." *Whirlpool Corp.*, 722 F.3d at 852–53.

The concepts of commonality and typicality "tend to merge" in practice because they both "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 n.5 (2011) (quoting *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 157–58 n. 13 (1982)).

For the first time here, the Court will discuss some of the arguments and defenses Defendant raised in opposition to ascertainability. First, Defendant argues that Plaintiff's claims are atypical of putative class members' claims because there is no feasible way to determine whether all of the identified accounts were incurred for personal, family, or household purposes. The Court need not weigh in on the ultimate merits of this claim, but it is clear from the spreadsheet that only university debts, similar to that once belonging to Plaintiff, were included in the spreadsheet. Further, the class expressly excludes any debts not incurred for personal, family, or household purposes. Plaintiff's claims, and any defenses raised thereto, will be typical of the putative classes as a whole.

Next, Defendant has, in essence, argued that Plaintiff's Class 2 claims are not typical of the rest of the putative plaintiffs' claims because Plaintiff is not a member of Class 2. Defendant posits that Plaintiff's eventual payment was remitted directly to the OAG, and not GRC. At the outset, it is clear to the Court that Class 2 encompasses not just those account debtors who have paid GRC directly, but rather, all account debtors who paid any party subsequent to receiving allegedly misleading correspondence from GRC, thereby causing GRC to derive some monetary benefit. While it is not yet known whether GRC ultimately derived a monetary benefit from Plaintiff's account, this question is typical of all Class 2 putative plaintiffs.

Next, Defendant argues that the FDCPA's statute of limitations bars claims for any violations that occurred before July 27, 2015. The Sixth Circuit has emphasized that "courts must be vigilant to ensure that a certified class is properly constituted," and more specifically, "district courts have broad discretion to modify class definitions." *Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007). In *Godec v. Bayer Corp.,* No. 1:10-CV-224, 2011 WL 5513202, at *6 (N.D. Ohio Nov. 11, 2011), the defendant planned to invoke a statute-of-limitations defense which would have precluded a portion of the putative plaintiffs from class participation. The court reasoned that because the statute of limitations did not apply to the plaintiff's individual claims, the plaintiff was not typical of class members whose only alleged injuries occurred prior to the applicable limitations period. *Godec*, 2011 WL 5513202, at *6. Ultimately, the court trimmed the proposed class period by using the date the complaint was filed and then counting back four years—the relevant limitations period. *Id.* The Court would adopt the same approach here. Plaintiff filed the instant case on July 27, 2016, but proposes to extend the class period back to July 27, 2014. The FDCPA statute of limitations is one year. If the Court were to certify Plaintiff's class as proposed, claims that were previously extinguished would be

revived simply by virtue of Plaintiff filing this case. In any event, these defenses are not typical of Plaintiff's individual claims and the Court would begin by modifying the class definitions to begin on July 27, 2015.

In a similar vein, Defendant has argued in several places that it plans to assert the defense that many putative class members' claims are barred under the theories of claim preclusion and/or the collateral attack doctrine.[3] Further, Defendant argues that extensive individualized fact-finding will be necessary to identify which class members' accounts were recalled by the OAG after GRC sent their allegedly unlawful collection notices and were subsequently reduced to judgment in state courts across Ohio, thereby barring class participation. It appears to the Court that there is no way of undergoing this examination without undergoing *extremely extensive* individualized fact-finding. Whereas Class 1 putative class members can be—and have been—readily identified by GRC's internal records, those Class 2 putative class members who may be barred from bringing their claims due to issue preclusion or the collateral attack doctrine can only be identified by the OAG manually reviewing files.[4] However, for two reasons, the Court need not determine whether this process is so burdensome that the individual issues predominate over the general issues. First, these stated defenses do not apply to Plaintiff's account and therefore, her claims are not typical

---

[3] In its Response, Defendant explains "[t]he OAG routinely recalls unpaid debts from GRC and appoints special counsel to pursue legal remedies with respect to the debts. According to the OAG, it is likely that a judgment was entered with respect to the debts of a number of the putative class members and that such judgments include the collection costs upon which Plaintiff's claims are based." (Doc. 51, Resp. at 8 (citing Doc. 51, Ex. A, Tharp Aff. at ¶¶ 9–10).

[4] "Identifying those individuals who were sent or caused to be sent collections pertaining to consumer debts alleged to be owed to various entities of the State of Ohio against whom a judgment may have been obtained would be exceedingly burdensome, in terms of both time and cost. Doing so would require an individual to manually review the Office of the Ohio Attorney General's file of each individual claim including possibly locating and contacting all of the assigned special counsel to confirm whether judgment was obtained. It is estimated that such a review could take approximately fifteen to thirty minutes per claim. The Office of the Ohio Attorney General has not previously identified those claims against whom a judgment was obtained due to the burden associated and the lack of resources to do so." (Doc. 51, Ex. A, Tharp Aff. at ¶ 11). Defendant extrapolates this estimate and concludes that it would take between 10,000 and 20,000 total hours to identify these accounts. (Doc. 51, Resp. at 9).

to that portion of Class 2 putative members. Second, Plaintiff has failed to satisfy all of the Rule 23(a) factors, so the Court need not consider predominance under Rule 23(b)(3).

In sum, the Court concludes that Plaintiff has not shown that her claims are typical of putative class members having claims that arose entirely before the applicable limitations period. Further, Plaintiff has failed to show that her claims are typical of those Class 2 putative class members who have had the OAG recall their files from GRC and were subsequently reduced to judgment. Otherwise, Plaintiff's claims are typical of Class 1 putative plaintiffs.

### 4. Adequacy

Rule 23(a)(4) allows certification only if "the representative parties will fairly and adequately protect the interests of the class." "This prerequisite is essential to due process, because a final judgment in a class action is binding on all class members." *Am. Med. Sys.,* 75 F.3d at 1083. Class representatives must meet two criteria to satisfy adequacy: "(1) the representative must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Id.* While the adequacy requirement tends to overlap with the commonality and typicality requirements to some degree, the adequacy requirement "also raises concerns about the competency of class counsel and conflicts of interest." *Dukes*, 564 U.S. at 349 n.5.Here, Plaintiff argues that she has been steadfast in this litigation to this point and further expects to be treated precisely in the same manner as the other putative class members with respect the issues of FDCPA liability, statutory damages, and disgorgement (or payment reapplication). Further, Plaintiff contends that class counsel has substantial experience litigating FDCPA matters and class action lawsuits. Defendant contends Plaintiff's interests may not be aligned with those unnamed class members subject to the unique defenses of claim preclusion and under the collateral attack doctrine. Defendant objects more strenuously to Plaintiff's ability to adequately represent the

interests of the class due to Plaintiff's father being a partner at the law firm seeking to serve as class counsel.

As one court has pointedly summarized, "[t]he problem stems from the class representative's duty to monitor class counsel. A class representative's duties are generally nominal, but this one is significant." *Wexler v. AT & T Corp.*, 323 F.R.D. 128, 130 (E.D.N.Y. 2018). In noting the inherent divergence of the interests of class counsel and the class itself, the Seventh Circuit explained:

> the incentive of class counsel, in complicity with the defendant's counsel, to sell out the class by agreeing with the defendant to recommend that the judge approve a settlement involving a meager recovery for the class but generous compensation for the lawyers—the deal that promotes the self-interest of both class counsel and the defendant and is therefore optimal from the standpoint of their private interests.

*Creative Montessori Learning Centers v. Ashford Gear LLC*, 662 F.3d 913, 918 (7th Cir. 2011). "A vigilant class representative will—at least in theory—act as a foil to self-dealing by class counsel. Courts fear that an interest in class counsel's fee will dull that vigilance, especially if the fees are likely to dwarf the class representative's own recovery." *Wexler*, 323 F.R.D. at 130.

The Court cannot ignore the fact that Plaintiff's relationship with class counsel creates a conflict of interest. Plaintiff's father has filed an affidavit attesting: 1) he has not had any professional involvement in the present matter since it became apparent that a class action would be filed; 2) he has not had any personal involvement in this matter since he paid Plaintiff's balance in full in 2016; and 3) he has played no role in Plaintiff's representation, nor will he seek to serve as class counsel in the future. (Doc 54-1, M. Thompson Decl. at ¶¶ 13, 14). However, none of these attestations cure the underlying conflict of interest facing Plaintiff. Plaintiff's father, as a partner in the firm serving as class counsel, stands to gain substantial monetary benefits at the conclusion of this litigation if this class were to be certified. It is very plausible that Plaintiff would

personally benefit more from class counsel receiving a large reward in reasonable attorneys' fees than she would if she vigorously prosecuted the interests of the class.

Courts have denied class certification where the relationship between class counsel and the class representative was more tenuous than it is here. In *Langendorf v. Skinnygirl Cocktails, LLC*, 306 F.R.D. 574, 581 (N.D. Ill. 2014), the court had "genuine concern about conflicts of interest" and denied class certification where the class representative's father had recommended class counsel to her and her father also served as co-counsel with class counsel in other matters. The Ninth Circuit upheld the denial of class certification where "[the plaintiff] and his attorney worked together and are close friends. [Plaintiff's] attorney was also his landlord. It is not an abuse of discretion to find that this relationship indicated a potential conflict of interest between [the plaintiff] and his counsel and the proposed class members." *Drimmer v. WD-40 Co.*, 343 F. App'x 219, 221 (9th Cir. 2009).

For these reasons, Plaintiff has failed to demonstrate that she will fairly and adequately protect the interests of the class. Having found that Plaintiff failed to satisfy all four requirements found in Rule 23(a), the Court need not undergo an analysis of Rule 23(b)(3)'s requirements.

## IV. CONCLUSION

Based on the foregoing, Plaintiff's Motion for Class Certification is **DENIED**. The Clerk shall **REMOVE** Document 48 from the Court's pending motions list.

**IT IS SO ORDERED.**

                                                        __*/s/ George C. Smith*__
                                                       **GEORGE C. SMITH, JUDGE**
                                                       **UNITED STATES DISTRICT COURT**